**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Steve S., | ) | |
| | ) | |
|    *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 19 CV 50041 |
| | ) | Magistrate Judge Lisa A. Jensen |
| Andrew Marshall Saul, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
|    *Defendant*. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Steve S. brings this action under 42 U.S.C. § 405(g) challenging the denial of disability benefits. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed and remanded for further proceedings consistent with this Memorandum Opinion and Order.

**I. BACKGROUND**

Plaintiff protectively filed a Title II application for disability benefits beginning on October 31, 2013. These claims were denied on November 10, 2015, and also upon reconsideration on May 25, 2016. Plaintiff then requested a hearing, which took place on July 12, 2017 before Administrative Law Judge James Wascher ("the ALJ"). The ALJ denied Plaintiff's application for disability. Thereafter Plaintiff filed a request for review of the hearing decision, which was denied on December 11, 2018, thus making the ALJ's decision the final decision for purposes of judicial review.

    **A. Medical Evidence**

The record demonstrates that Plaintiff sought medical treatment for a number of aliments and medical conditions, but this appeal deals predominantly with Plaintiff's cervical degenerative disc disease. Accordingly, the following summary will focus on this condition.

On October 31, 2013, Plaintiff saw his internist Dr. David Mitchell for complaints of neck pain that was rated as 10/10 and aggravated by bending, twisting and position. R.333. Upon examination, he exhibited tenderness and spasm. R. 334. He was prescribed Meloxicam. R. 335. On February 24, 2014, Plaintiff was seen by a physical therapist regarding his neck pain which he described as ranging from 4/10 to 9/10 with radiation to either arm. R. 335. He also reported "pops" in his neck, weekly headaches, and intermittent numbness in either arm. *Id*. He exhibited moderate tightness in his suboccipital musculature with mild tightness over the cervical paraspinals. R.336. Range of motion testing was reduced with associated pain. *Id.* On June 30, 2014, Plaintiff again saw Dr. Mitchell with continued complaints of severe neck pain. R.338. His pain was associated with numbness, tingling and weakness. He had tingling into his right hand and was dropping things. R. 338. Upon examination, he exhibited decreased range of motion and tenderness. Dr. Mitchell ordered an MRI and a pain management consult. R. 339.

A July 9, 2014 MRI showed multilevel degenerative changes in the cervical spine with narrowing and slight impingement of the exiting nerve root on the right side at C6-C7. R.310. On July 14, 2014, Plaintiff presented to Dr. Eric Freeman at Rockford Pain Center due to neck pain and numbness in the right arm and hand involving the second and third fingers. He rated the pain as 8/10, and Dr. Freeman's review of systems was positive for "dropping things." R. 374. Dr. Freeman diagnosed left greater than right neck pain with right forearm and hand numbness and pain. He noted that the right arm symptoms were concerning for a cervical radiculopathy

possibly in a C7-type distribution. He performed a C6-C7 interlaminar epidural steroid injection. R. 375.

On July 28, 2014, Plaintiff's pain remained unchanged and was rated as 7/10, although he noted mild relief from the steroid injection. R. 340. His Metoprolol was increased, and he was told to avoid aggravating activities. R. 341. On August 18, 2014, Plaintiff reported to Dr. Freeman that since the epidural injection, he no longer had any right-sided neck pain but continued to have numbness and tingling in the right forearm and hand, particularly in the second and third digits. R. 372. His primary complaint was left-sided neck pain near the base of his skull, which he continued to rate as 8/10. Dr. Freeman's impression was left-sided neck pain, right sided neck pain resolved after epidural steroid injection at C6-C7 and right forearm and hand numbness, may be due to ongoing cervical radiculopathy. He administered left-sided facet joint injections at C2-C3 and C3-C4. R. 372-73.

On September 22, 2014, Plaintiff reported that he did not find any significant relief from the facet joint injections even in the short term. R. 370. He continued to experience right forearm and hand numbness, which Dr. Freeman attributed to likely ongoing cervical radiculopathy. He was given samples of Ipsor at this time and branch blocks were under consideration. R. 370-71. On October 20, 2014, Plaintiff reported that Ipsor and Amrix did not provide relief. R. 368. His pain continued on the left side of his neck, rated as 8/10, and his right arm and hand numbness and tingling continued. He was started on a trial of Dulexetine. R. 368-69. On November 7, 2014, Plaintiff returned to Dr. Mitchell with complaints of ongoing neck pain and right-hand numbness with no relief after two injections. Upon examination, he exhibited decreased range of motion and tenderness. He was referred to Rockford Spine Center for his ongoing pain and numbness. R. 347.

On November 24, 2014, Plaintiff was seen for a consultation with neurosurgeon Dr. Fred Sweet. He complained of neck and bilateral shoulder pain with numbness in his hands and all five digits. R. 425. Upon examination, he had a positive Spurling maneuver with left lateral rotation and extension and Dr. Sweet noted that the MRI showed severe facet arthropathy with increased signal intensity on STIR images in the facet joint at C2-3 and C3-4 on the left with a corresponding synovial cyst. R. 426-27. Dr. Sweet described "fairly debilitating neck pain" and noted that if the pain became unbearable, he would recommend a posterior C2-C4 instrumental fusion with an iliac bone graft. R. 427. According to Dr. Sweet, there was a 70% chance that this would improve his pain, but some neck pain would likely remain. R. 427.

On December 1, 2014, Plaintiff reported continuing neck pain and right arm and hand numbness. He stated that the trial of Cymbalta made him "not feel right" and did not provide any relief. R. 366. He was started on Nortriptlyline. *Id.* On January 19, 2015, Plaintiff returned to Dr. Freeman for continued left-sided neck pain and some return of the right-sided pain along with continuing right arm and hand numbness. He had discontinued Nortriptyline because he had a decrease in renal function and had to discontinue all his NSAIDs as well. R. 364. He was prescribed Gabapentin and compound cream. R. 365. On March 16, 2015, Plaintiff reported that the Gabapentin was causing him significant sedation. R. 362. His doctor reported that although Plaintiff had not found relief with any interventions or medications, he did not have any significant remaining options for him. *Id.*

On August 24, 2015, Plaintiff followed up regarding his back pain in the lumbar and thoracic cervical spine, which had been waxing and waning since onset. R. 446. Upon examination, he had decreased range of motion and tenderness in the cervical, thoracic, and lumbar spine. R. 447. An x-ray of his lumbar spine showed moderate enter wedging compression

4

at T12, multilevel degenerative disc disease and facet arthropathy, and there was the suggestion of a subtle pars defect on the left at L5. R. 452.

### B. The Administrative Hearing

At the time of the administrative hearing, Plaintiff was 53 years old. He had worked as a laborer for approximately 25 years. He started experiencing cervical spine pain in 2013-2014. R. 47. He described his neck pain as severe and increasing. He stated that it is hard to hold his head up because of the pain. R. 48. The pain goes into his head and causes headaches. He cannot take anything for the pain because of his kidney disease. R. 49. He also gets pain and numbness in his right forearm and it is hard to hold things. The numbness has been getting worse and it is hard to write with his right hand. R. 50. The right forearm pain and numbness also goes into his right hand and fingers and is constant. R. 54-55. Because of his right-hand symptoms, he has difficulty grasping and holding onto objects and he drops things a lot.

Plaintiff's counsel argued at the administrative hearing that Plaintiff should be found presumptively disabled because he met or equaled Listing 1.04(A). He pointed to evidence of a displaced nerve root along with ongoing neurological abnormality, left sided neck pain at C2-5 and right-sided neck pain at C-5 through C-7. He pointed to medical records including Plaintiff's MRI that showed broad based disc protrusion with slight impingement of the exiting nerve root on the right side. He also pointed to the medical records from Plaintiff's visits with Dr. Sweet, Dr. Freeman and Dr. Mitchell.

### C. The ALJ's Decision

Applying the five-step analysis utilized in social security decisions, 20 C.F.R. § 416.1520(a)(4), the ALJ concluded that Plaintiff was not disabled. At step one, he found that Plaintiff was not engaged in substantial gainful activity since the alleged disability onset date. At

step two, the ALJ found that Plaintiff suffered from several severe impairments, including cervical degenerative disc disease, but at step three he concluded that Plaintiff's impairments did not meet or equal any listed impairment. At step four, the ALJ found that Plaintiff cannot perform his past work but can hold a job that limits his activity according to the residual functional capacity ("RFC"). Finally, at step five, the ALJ relied on the testimony of a vocational expert to conclude that Plaintiff can work in various occupations such as parts inspector/sorter, cashier and parts assembler.

**II. Discussion**

The reviewing court reviews the ALJ's determination to see if it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Accordingly, the reviewing court takes a very limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). "The ALJ is not required to mention every piece of evidence but must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that 'as a reviewing court, we may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review.'" *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (quoting *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)). An ALJ only needs to "minimally articulate his reasons for crediting or rejecting evidence of disability." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). But even when adequate record evidence exists to support the ALJ's decision, the decision will not be affirmed if the ALJ does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d

539, 544 (7th Cir. 2008). Moreover, federal courts cannot build a logical bridge on behalf of the ALJ. *See Mason v. Colvin*, No. 13 C 2993, 2014 WL 5475480, at *5-7 (N.D. Ill. Oct. 29, 2014).

### A. Listing Analysis

On appeal, Plaintiff argues that reversal or remand is proper because the ALJ failed to adequately analyze whether his cervical degenerative disc disease meets or medically equals the criteria of Listing 1.04(A).

A claimant is eligible for benefits if he has an impairment that meets or equals an impairment found in the listing of impairments. 20 C.F.R. § 404.1520(d). The listings specify the criteria for impairments that are considered presumptively disabling. 20 C.F.R. § 404.1525(a). A claimant may also demonstrate presumptive disability by showing that his impairments are accompanied by symptoms that are equal in severity to those described in a specific listing. 20 C.F.R. § 404.1526(a). "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). Here, as set forth above, Plaintiff's counsel argued at the administrative hearing that Plaintiff's cervical degenerative disc disease meets or equals Listing 1.04(A).

Listing 1.04 addresses spinal disorders, including degenerative disc disease that result in compromise of a nerve root or the spinal cord. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04. Listing 1.04(A) requires "evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss[.] 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(A).

Here, the ALJ found that Plaintiff's cervical degenerative disc disease constituted a severe impairment. R. 20. However, in finding that Plaintiff's impairment did not meet or equal Listing 1.04 the ALJ stated: "The claimant's diagnostic studies and objective physical examinations do not reflect disruption of motor function consistent with nerve root involvement, there is no atrophy or muscle wasting, and he ambulates effectively." R. 20. This type of analysis is "the very type of perfunctory analysis" the Seventh Circuit has "repeatedly found inadequate to dismiss an impairment as not meeting or equaling a Listing." *Minnick*, 775 F.3d at 935-36. In *Minnick*, the ALJ merely stated that the plaintiff's degenerative disc disease did not meet or equal Listing 1.04 because "[t]he evidence does not establish the presence of nerve root compression, spinal arachnoiditis, or spinal stenosis resulting in pseudoclaudication, as required by that listing." *Id.* at 935. The court in *Minnick* noted that this statement provided no analysis to support the ALJ's conclusion. In addition, the court noted that the ALJ failed to acknowledge several facts in the record that could in fact meet or equal the listing. *Id.* at 936. As such, the court held that the ALJ failed to build a logical bridge from the evidence to her conclusion and remanded the case.

Here too, in his listing analysis the ALJ does not cite to any evidence in the record nor provide any analysis supporting his conclusion. Even more problematic, the one sentence listing analysis appears to mischaracterize the requirements of Listing 1.04(A), making it unclear whether the ALJ even applied the right criteria to the facts of this case. First, effective ambulation is not a factor in determining whether a claimant meets or equals Listing 1.04(A). That requirement is found in Listing 1.04(C). *See Snider v. Colvin*, No. 14-CV-1249, 2015 WL 4180889, at *8 (C.D. Ill. July 10, 2015) (noting that the ability to ambulate effectively is not a requirement of Listing 1.04(A)). Second, Listing 1.04(A) does not require a finding of "atrophy

8

or muscle wasting." R. 20. The Listing requires motor loss which is *either* atrophy with muscle *weakness* or muscle *weakness*. Moreover, the ALJ's statement that he did not find "evidence of disruption of motor function consistent with nerve root involvement" is so vague it is impossible to determine what the ALJ means. R. 20. Did the ALJ find evidence of motor loss that was inconsistent with nerve root involvement or simply no evidence of motor loss at all? Did he even analyze the records for evidence of motor loss (which again is evidence of atrophy with muscle weakness *or* muscle weakness) or did he focus, as his opinion states, on whether there was evidence of motor disfunction? If so, how did the ALJ define motor disfunction? Did the ALJ find that there was evidence of the remaining elements of Listing 1.04(A)? There is no way to know the answer to these questions on this record

      The Commissioner agrees that the ALJ's discussion of the listings at step three was "brief", yet he alleges that the ALJ considered Listing 1.04 and the criteria for that Listing. Defendant's Brief at 4, Dkt. 16. The Commissioner states that "support for the ALJ's step-three finding can be found later in the ALJ's discussion of the evidence." *Id.* The Commissioner cites to the record at pages 22 and 23, which contains the ALJ's summary of the medical records and RFC findings. There is no mention of any listing in these pages and no discussion of how or why Plaintiff failed to meet Listing 1.04(A). While the Court will not discount the ALJ's listings analysis just because it appears elsewhere in the opinion, the Commissioner has not explained how the medical evidence cited constitutes the ALJ's listings analysis.

      Instead, the Commissioner points to a summary of Plaintiff's medical evidence, which makes no reference to any listing. A mere summary is not the same as meaningful analysis. *See Chuk v. Colvin*, No. 14 C 2525, 2015 WL 6687557, at *8 (N.D. Ill. Oct. 30, 2015) ("[S]ummarizing a medical history is not the same thing as analyzing it, in order to build a

logical bridge from evidence to conclusion."); *Alevras v. Colvin*, No. 13 C 8409, 2015 WL 2149480, at *4 (N.D. Ill. May 6, 2015) ("[M]erely summarizing medical evidence is not the same thing as analyzing it and explaining how the evidence supports the conclusion that the claimant is not disabled."). Thus, the Court finds that the ALJ did not analyze the listings later in the opinion.

Even the evidence that the Commissioner cites to that appears later in the opinion does not support the one-line statement the ALJ made at step three. The Commissioner argues that later in the opinion the ALJ noted the lack of neurological deficits (including no evidence of sensory loss) in Plaintiff's examinations, as well as the lack of any evidence of muscle weakness. However, lack of evidence of sensory loss or muscle weakness were not the reasons the ALJ gave at step three. Recall the ALJ stated that Plaintiff did not meet Listing 1.04 because there was no "disruption of motor function consistent with nerve root involvement," "no atrophy or muscle wasting, and he ambulates effectively." R. 20. The Commissioner cannot point to evidence or arguments to uphold an ALJ's listing analysis that the ALJ did not rely upon. *See, e.g., Kastner v. Astrue*, 697 F.3d 642, 649 (7th Cir. 2012) (finding that where ALJ stated Listing 1.04(A) was not met because there was no evidence of limitation of motion of the spine, the Commissioner could not support listing analysis by arguing no evidence of motor loss had been shown because the ALJ never referenced motor loss as a basis for the determination at step 3).

Next, the Commissioner argues that the ALJ properly relied on the opinion of state agency physician, Dr. Bernard Stevens, that a listing was not met. However, the Court's review on appeal is confined to the reasons articulated by the ALJ in his decision. *Jelinek v. Astrue*, 662 F.3d 805, 811-12 (7th Cir. 2012). There is no evidence in this record that the ALJ relied upon the state agency physician's opinion to support his findings at step three. *See, e.g., Zellweger v.*

10

*Berryhill*, 354 F. Supp. 3d 921, 927 (N.D. Ill. 2018); *Davis v. Berryhill*, No. 416CV00196TABRLY, 2017 WL 4456722, at *2 (S.D. Ind. Oct. 6, 2017).

Finally, the Commissioner argues that Plaintiff cannot establish that he meets all the criteria for Listing 1.04(A). The Commissioner does not dispute that Plaintiff has cervical degenerative disc disease with evidence of nerve root involvement and limitation of motion. Defendant's Brief at 6–7, Dkt. 16. The Commissioner argues, however, that Plaintiff cannot establish sensory loss or motor loss. This Court is not so sure.

Dr. Mitchell noted on June 30, 2014 that Plaintiff's neck pain is severe and chronic and was associated with numbness, tingling and weakness. Specifically, Plaintiff had tingling into his right hand and was dropping things. R. 338. On July 14, 2014, Dr. Freeman noted that Plaintiff had neck pain and right arm numbness radiating into the second and third fingers. A review of systems was positive for "dropping things." R. 374. Dr. Freeman noted that the right arm symptoms are concerning for a cervical radiculopathy, possibly in a C7-type distribution. R. 375. On November 7, 2014, Dr. Mitchell noted right-hand numbness and no relief with injections. R.348. On March 16, 2015, Dr. Freeman's impression included that right forearm and hand paresthesias may be due to ongoing cervical radiculopathy not improved with epidural steroid injection. In addition, a functional capacity examination dated September 15, 2015 found "apparent sensory loss bilaterally," and further noted "Based upon the valid effort demonstrated by the client, the following deficits are noted:" "Diminished functional use of the upper extremities in work above the chest level." R. 568. Moreover, the ALJ relied upon Plaintiff's "history of reported weakness" to justify the inclusion of avoiding concentrated exposure to cold and vibration into his RFC. R. 23-24.

11

These records and findings may be consistent with sensory loss, *see, e.g., Zellweger*, 354 F.Supp.3d at 929 (finding the plaintiff's complaints to various physicians of numbness in hand/fingers is consistent with sensory loss under Listing1.04(A) analysis), and muscle weakness. *See Minnick*, 775 F.3d at 936 (finding that plaintiff's testimony that his pain limited his ability to use his fingers may be evidence of motor loss). It is concerning that these findings are not mentioned in the ALJ's step three analysis nor are many of them referenced in the later review of the medical records. It is unclear if the ALJ did not see these records or considered them and rejected them as evidence of motor loss and sensory loss. It is also concerning that when the ALJ referenced Plaintiff's testimony that he had pain and numbness in his dominant right hand and could not hold on to objects or write sometimes, the ALJ incorrectly stated that a pain specialist had reported "that an epidural steroid injection had 'essentially resolved' his right-sided neck and arm symptoms." R. 23. As Plaintiff correctly points out, the records state that the injection temporarily resolved the right neck pain but did not resolve the right arm and hand symptoms.

**III. Conclusion**

Thus, for the foregoing reasons, the case must be remanded to allow the ALJ to consider all the evidence and the correct requirements under Listing 1.04(A) and to make a determination as to whether Plaintiff's symptoms meet this Listing. This Court is not suggesting one way or the other whether Plaintiff meets Listing 1.04(A). Rather, this Court is remanding so that the ALJ can make a determination at step three and support that decision in a manner that would allow a reviewing court to trace the path of the ALJ's reasoning. On remand, the ALJ must also adequately address whether Plaintiff equaled Listing 1.04(A) and support that reasoning with

medical evidence. Because the Court is remanding for a new analysis at step three, this Court need not evaluate Plaintiff's remaining arguments.

Date: July 16, 2020          By: _____
                                                     Lisa A. Jensen
                                                     United States Magistrate Judge